IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

JEFFREY GIDDENS, JUSTIN       :
GIDDENS, and BONNIE GIDDENS,   :
      :
    Plaintiffs,       :
      :     CIVIL ACTION
v.       :     NO. 2:05-CV-19-WCO
      :
UNIVERSITY YACHT CLUB, INC.,     :
      :
    Defendant.       :

## ORDER

The captioned case is before the court for consideration of defendant's motion for summary judgment [15-1].

### I.     Background

Plaintiffs assert that defendant violated their rights under the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. § 1001 et seq., and the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1986. Plaintiff Jeffrey Giddens was employed by defendant as a general manager. Defendant is a non-profit corporation and private membership club. In accordance with its bylaws, defendant's affairs are run by a Board of Governors ("Board"), which consists of eight governors. Defendant's day-to-day operations are administered

by five officers with the "commodore" serving as the president.  The governors and officers are all elected and serve voluntarily on a part-time basis; none is compensated.   As general manager, Mr. Giddens acted as defendant's chief operating officer and reported directly to the commodore.

While employed by defendant, Mr. Giddens sustained numerous job-related physical injuries, culminating in spinal fusion surgery in July 2003. During Mr. Giddens' employment with defendant, his wife and son, plaintiffs Bonnie and Justin Giddens, and he were provided health insurance through a policy with Blue Cross - Blue Shield of Georgia.   On September 3, 2003, Mr. Giddens was terminated by defendant.  Defendant alleges that he was terminated for cause, citing Mr. Giddens' use of the corporate credit card for personal purchases, unauthorized erection of a fence on defendant's property, establishment of a consulting organization that conflicted with his managerial duties, and dereliction of management duties.  Plaintiffs, however, claim that Mr. Giddens was terminated because of personal conflicts and because of his physical limitations due to his injuries.

Subsequent to Mr. Giddens' termination, plaintiffs have incurred medical expenses.  Plaintiffs allege that defendant failed to notify Mr. Giddens within thirty days of his termination of his right to elect continuing healthcare coverage

2

under COBRA.   Plaintiffs further allege that such failure violated their rights under ERISA.   Plaintiffs brought suit under 29 U.S.C. §§ 1132 and 1161, seeking to recover medical expenses that they claim would have been covered under the extended policy.   Plaintiffs also seek penalties and attorney's fees.   Defendant now moves for summary judgment.

## II.       Summary Judgment Standard

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment.   See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

It is well-settled that a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant.   See, e.g., Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).   It is important to recognize, however, that this principle does not require the parties to concur on every factual point.   Rule 56 "[b]y its very terms . . . provides that the mere existence of some alleged factual dispute between the parties will not defeat an

3

otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party. The nonmoving party still bears the burden of coming forth with sufficient evidence. <u>See</u> <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1080 (11th Cir. 1990). However, it is important to note the difference "between direct evidence and inferences that may permissibly be drawn from that evidence. Where a nonmovant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide." <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996). On the other hand, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" <u>Id.</u> at 743. Adopting language from one of its sister circuits, the Eleventh Circuit stated:

> If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible

4

under the governing substantive law.   This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

Id. (citation omitted).   "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests."   Id.

### III.    Analysis

Defendant moves for summary judgment, arguing that it was not required to give Mr. Giddens notification of his right to elect COBRA coverage because (1) Mr. Giddens' termination did not constitute a "qualifying event" under COBRA as he was terminated for gross misconduct; and (2) defendant has no obligation to provide continued coverage to plaintiffs as defendant fits within the COBRA small employer exemption.

### A.    "Qualifying Event"

COBRA provides that "[t]he plan sponsor of each health group shall provide . . . that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan."   29 U.S.C. § 1161(a). The term "qualifying event" as defined in the statute means an event that would result in the loss of coverage, including termination of employment other than by

reason of the employee's "gross misconduct."  29 U.S.C. § 1163.  The term "gross misconduct" is not defined in COBRA.  Federal courts, however, have attempted to develop a definition.  See, e.g., Richard v. Indus. Commercial Elec. Corp., 337 F. Supp. 2d 279, 282 (D. Mass. 2004); Zickafoose v. UB Servs., Inc., 23 F. Supp. 2d 652, 655 (S.D. W.Va. 1998).  Generally, courts have concluded that gross misconduct must involve more than ordinary negligence or incompetence and requires conduct that is intentional, wanton, willful, deliberate, reckless, or in deliberate indifference to an employer's interest.  Mlsna v. Unitel Commc'ns, Inc., 91 F.3d 876, 881 (7th Cir. 1996); Lloynd v. Hanover Foods Corp., 72 F. Supp. 2d 469, 478-79 (D. Del. 1999); Collins v. Aggreko, Inc., 884 F. Supp. 450, 453 (D. Utah 1995) (citing Burke v. Am. Stores Employee Benefit Plan, 818 F. Supp. 1131, 1135 (N.D. Ill. 1993)).  An employee's deliberate violation or disregard of his or her employer's standards of behavior, particularly if repeated, may also constitute gross misconduct.  See Nakisa v. Cont'l Airlines, 2001 U.S. Dist. LEXIS 8952, at *2-*3 (S.D. Tex. May 10, 2001); Bryant v. Food Lion, Inc., 100 F. Supp. 2d 346, 376 (D. S.C. 2000);  Paris v. F. Korbel & Bros., Inc., 751 F. Supp. 834, 838 (N.D. Cal. 1990).

Defendant cites to multiple infractions by Mr. Giddens that it claims constitute "gross misconduct."  Defendant claims that Mr. Giddens was derelict in his management of defendant's finances, that he used defendant's property to

satisfy a personal debt, and that he repeatedly used the corporate credit card to make personal purchases. Plaintiffs, however, deny these actions and claim that Mr. Giddens' termination was due to a personal conflict with the commodore. Thus, the true reason for Mr. Giddens' termination remains in dispute. Therefore, the court finds that a disputed question of material fact remains as to whether Mr. Giddens was terminated for gross misconduct.

**B.      Small Employer Exemption**

Although COBRA mandates that employers give former employees the opportunity to continue coverage under the employer's group health plan if a qualifying event occurs, it creates an exception for employers who "normally employed fewer than twenty employees on a typical business day during the preceding calendar year." 29 U.S.C. § 1161(b). Thus, if the small employer exemption applies to defendant, it would not be required to provide plaintiffs with notice or continuing coverage under the plan. Defendant argues that its officers should not be considered "employees" within the meaning of the statute. Defendant further argues that, even if the officers are counted as employees, it normally employed fewer than twenty employees on a typical business day in 2002.

To determine whether defendant fits within this small employer exception, the court turns to the Treasury Department's regulations governing group health plans with respect to qualifying events occurring in plan years beginning on or after January 1, 2000.   See 26 C.F.R. §§ 54.4980B-1 through B-10.   These regulations provide, in pertinent part, as follows:

(b)     An employer is considered to have normally employed fewer than 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its typical business days during that year.

(c)     All full-time and part-time common law employees of an employer are taken into account in determining whether an employer had fewer than 20 employees; however, an individual who is not a common law employee of the employer is not taken into account. Thus, the following individuals are not counted as employees . . .

(1)     Self-employed individuals . . .

(2)     Independent contractors (and their employees and independent contractors); and

(3)     Directors (in the case of a corporation).

(d)     In determining the number of the employees of an employer, each full-time employee is counted as one employee and each part-time employee is counted as a fraction of an employee, determined in accordance with paragraph (e) of this [regulation].

8

(e)     An employer may determine the number of its employees on a daily basis or a pay period basis. The basis used by the employer must be used with respect to all employees of the employer and must be used for the entire year for which the number of employees is being determined. If an employer determines the number of its employees on a daily basis, it must determine the actual number of full-time employees on each typical business day and the actual number of part-time employees and the hours worked by each of those part-time employees on each typical business day. Each full-time employee counts as one employee on each typical business day and each part-time employee counts as a fraction, with the numerator of the fraction equal to the number of hours worked by that employee and the denominator equal to the number of hours that must be worked on a typical business day in order to be considered a full-time employee. If an employer determines the number of its employees on a pay period basis, it must determine the actual number of full-time employees employed during that pay period and the actual number of part-time employees employed and the hours worked by each of those part-time employees during the pay period. For each day of that pay period, each full-time employee counts as one employee and each part-time employee counts as a fraction, with the numerator of the fraction equal to the number of hours worked by that employee during that pay period and the denominator equal to the number of hours that must be worked during that pay period in order to be considered a full-time employee. The determination of the number of hours required to be considered a full-time employee is based upon the employer's employment practices, except that in no event may the hours required to be considered a full-time employee exceed eight hours for any day or 40 hours for any week.

26 C.F.R. § 54.4980B-2(A-5).   Both parties have employed this formula in

determining the number of employees employed by defendant in 2002 on a pay

period basis.  Although the parties appear to have used the same data, i.e.,
defendant's payroll records, plaintiffs have determined that defendant employed
more than twenty employees for twenty-nine out of fifty-two weeks, while
defendant has calculated that it employed more than twenty employees for only
eleven out of fifty-two weeks.[1]

The court has reviewed the parties' calculations and has discovered several
explanations for the discrepancy in the number of employees.  First, it appears
that defendant has used thirty-two as the number of hours required for an
employee to be considered "full-time," while plaintiffs have used thirty.
Plaintiffs argue that defendant's personnel policy categorizes employees who
work at least thirty hours as "continuous" and grants them the same employment
conditions as full-time employees.  Viewing this evidence in the light most
favorable to the non-movant, the court accepts plaintiffs' number.

Another explanation for the discrepancy between the parties' conclusions
is that plaintiffs apparently have included "vacation," "holiday," and "sick"

---

[1] Both parties' calculations include the five officers as full-time employees.
Defendant, however, argues that the officers are not employees.  Plaintiffs
concede that if the five officers are not considered "employees" within the
meaning of the statute, defendant has not employed more than twenty employees
during 2002 and would fall within the small employer exemption from COBRA.

hours in their calculations.  Defendant, however, argues that these hours should not be included as they are merely used for payroll calculations and are not hours that were actually worked by the employees.  As the Treasury Department's regulations focus on an "actual" count of employees and their hours worked, the court agrees with defendant that the only hours that may be counted for COBRA purposes are those which employees actually worked.  See 26 C.F.R. § 54.4980B-2.

Plaintiffs' calculations are further flawed in that plaintiffs have included several "casual laborers" in their count of employees.  Plaintiffs, however, have provided no supporting documentation to verify that these "casual laborers" actually worked on certain days or for the requisite number of hours to be considered full-time employees.  Thus, the court cannot include them in its calculations.  Also, plaintiffs have double-counted employees who work for defendant in more than one capacity.  For example, an employee who typically worked over thirty hours in administration was considered a full-time employee, but if the employee worked another ten hours in the clubhouse, plaintiffs have also contributed the additional clubhouse hours towards the employee's part-time status.  The court finds that this is not in keeping with the regulations as one person cannot count as more than one employee.

The court has examined defendant's payroll records and recalculated the data in accordance with the foregoing discussion. The court has determined that defendant had fewer than twenty employees on at least half of the business days of 2002. Even if defendant's five officers are considered full-time employees for each week, defendant had twenty or more employees for only thirteen of the fifty-two weeks in 2002.

Furthermore, the court finds that defendant's officers cannot be considered "employees" for purposes of COBRA. The statutory definition of "employee" as "any individual employed by an employer" provides little guidance. 29 U.S.C. § 1002(6). The Supreme Court, however, has adopted a common law definition of "employee" under ERISA. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992). Thus, the definition of "employee" under ERISA incorporates "the general common law of agency, rather than . . . the law of any particular state." Id. at 323 n. 3 (quoting Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 740 (1989). Thus, the factors to be considered in determining whether an individual is an employee are: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the two parties; (6) whether the hiring party has the right

12

to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party. Reid, 490 U.S. at 751-52.

Several of the Reid factors do not even apply to the relationship between defendant and its five officers. Although the officers administer defendant's day-to-day operations, they are not hired but are elected and serve on a voluntary basis. Thus, defendant is not really a "hiring party" and it lacks both the right to control the manner and the means by which the officers perform their duties and the right to assign the officers additional duties.

Plaintiffs argue that the officers are compensated by defendant through special parking spaces, preferential seating at special events, free attendance at annual parties, provision of food and drinks at meetings, and free maintenance services. These incidental benefits, however, do not support plaintiffs' argument that the officers are employees. The common law agency test focuses on the "method of payment" and the "provision of employee benefits." Id. The officers

receive neither a salary nor typical employee benefits such as health insurance. Thus, these factors support defendant's claim that the officers are not employees.

Plaintiffs further argue that officers of a corporation are considered employees under Georgia law.   See O.C.G.A. § 14-2-140(10).   However, the Supreme Court clearly stated in Darden that the term "employee" under ERISA should incorporate "the general common law of agency, rather than . . . the law of any particular state."   503 U.S. at 323 n. 3. (quoting Reid, 490 U.S. at 740). Thus, this court cannot rely on the definition of "employee" under Georgia law when determining whether defendant must comply with COBRA notice and continued coverage requirements.[2]

As defendant's officers do not meet the definition of "employee" under the common law agency test, the court finds that they cannot be considered employees for purposes of ERISA.   Thus, the officers do not count in the determination of the number of defendant's employees under the small employer exemption from COBRA's continuing coverage requirement.

_____

[2] Furthermore, as the court's jurisdiction arises under 28 U.S.C. § 1331 rather than § 1332 the court is not required to apply state law pursuant to the Erie doctrine.  Cf. Cambridge Mut. Ins. Co. v. City of Claxton, 720 F.2d 1230, 1232 (11th Cir. 1983).

As defendant did not normally employ more than twenty employees during 2002, defendant fits within the small employer exemption from COBRA. See 29 U.S.C. § 1161(b). Therefore, the court finds that defendant has no obligation to provide continued coverage to plaintiffs. Id.

**IV.    Conclusion**

Based on the foregoing, defendant's motion for summary judgment [15-1] is hereby **GRANTED**.

IT IS SO ORDERED, this 1st day of March, 2006.

s/William C. O'K elley

WILLIAM C. O'KELLEY
Senior United States District Judge